# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAYLOR ELIZABETH LAYNE<br>248 Park Avenue<br>Pittsburgh, PA 15229<br><br>　　　　　Plaintiff,<br>　　v.<br><br>A-COMFORT SERVICE<br>INDUSTRIES, INC. d/b/a<br>A-Comfort Service<br>8600 Perry Highway<br>Pittsburgh, PA 15237<br><br>　　　　　Defendant. | CIVIL ACTION<br><br>CASE NO.:   2:23-cv-991<br><br>**JURY TRIAL DEMANDED** |

## CIVIL ACTION COMPLAINT

Taylor Elizabeth Layne (hereinafter referred to as "Plaintiff," unless indicated otherwise), by and through her undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. This action has been initiated by Plaintiff against A-Comfort Service Industries, Inc. d/b/a A-Comfort Service (hereinafter referred to as "Defendant") for violations of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101, *et. seq*.) and the Pennsylvania Human Relations Act ("PHRA").[1] Plaintiff asserts, *inter alia*, that she experienced unlawful workplace discrimination and retaliation, culminating in her termination from Defendant. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

---

[1] Plaintiff's claim under the PHRA is referenced herein for notice purposes. Plaintiff is required to wait one full year before initiating a lawsuit from date of dual-filing with the EEOC. Plaintiff must, however, file her lawsuit in advance of same because of the date of issuance of her federal right-to-sue letter under the ADA. Plaintiff's PHRA claims however will mirror identically her federal claims under the ADA.

## JURISDICTION AND VENUE

2. This Court has original subject matter jurisdiction over the instant action pursuant to 28 U.S.C. §§1331 and 1343(a)(4) because it arises under laws of the United States and seeks redress for civil rights violations under the ADA. There lies supplemental and/or ancillary jurisdiction over Plaintiff's future state-law claims, as they arise out of the same common nucleus of operative fact(s) as Plaintiff's federal claims asserted herein.

3. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction in order to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington,* 326 U.S. 310 (1945) and its progeny.

4. Pursuant to 28 U.S.C. §1391(b)(1) and (b)(2), venue is properly laid in this district because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

5. Plaintiff filed a Charge of discrimination and retaliation with the Equal Employment Opportunity Commission ("EEOC"). Plaintiff has properly exhausted her administrative proceedings before initiating this action by timely filing her Charge with the EEOC, and by filing the instant lawsuit within 90 days of receiving a right-to-sue letter from the EEOC.

## PARTIES

6. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

7. Plaintiff is an adult individual, with an address as set forth in the caption.

8. Defendant is a heating, plumbing and cooling company whose main office is located at the above-captioned address.

9. At all times relevant herein, Defendant acted by and through its agents, servants and/or employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

10. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

11. Plaintiff was hired by Defendant on or about January 20, 2023, as a Dispatcher/Office Associate.

12. Plaintiff was primarily supervised by co-owners Todd Rhule (hereinafter "TR") and Frank Morin (hereinafter "Morin"), as well as TR's wife, Office Manager, Susan Rhule (hereinafter "SR").

13. Throughout Plaintiff's employment with Defendant, she was a hard-working employee who performed her job well.

14. Plaintiff has and continues to suffer from ADA-qualifying disabilities, including but not limited to health conditions affecting her leg(s) and mobility (and associated complications/conditions). Plaintiff had undergone surgery for this condition(s) approximately 1½ years go.

15. Plaintiff's aforesaid medical conditions, at times, limits her ability to perform some daily life activities, including but not limited to walking, standing, lifting and bending.

16. Despite Plaintiff's aforesaid health conditions and limitations, she was able to perform her job duties well, however, Plaintiff (at times) required reasonable medical accommodations.

17. For example, in or about the third week of February of 2023, Plaintiff informed SR that she was experiencing leg pain, that the leg pain may be related to a previous surgery, and that Plaintiff had a doctor's appointment scheduled for March 1, 2023, for which she would need to leave work a few hours early.

18. After being evaluated by her doctor on or about March 1, 2023, Plaintiff informed Defendant's management, including but not limited to SR, that Plaintiff's doctor had placed her on anti-inflammatory medication, and if the medication did not help, Plaintiff might need to temporarily use a wheelchair until her aforesaid health conditions improved.

19. Thereafter, on or about March 8, 2023, Plaintiff provided Defendant's management with a doctor's note recommending that she be permitted to use a wheelchair at work, and that Defendant could reach out to Plaintiff's doctor's office with any questions.

20. Beginning on or about March 9, 2023, Plaintiff continued working in the office with the use of her wheelchair, and for the next week, Plaintiff continued to perform her job duties well, requiring only minimal assistance from other employees to unload her wheelchair from her car and to assist her to Defendant's building as it was not wheelchair accessible.

21. Nonetheless, on or about March 16, 2023, Plaintiff was abruptly called into a meeting with TR and was informed that she was being terminated, allegedly for "performance issue," without further detail.

22. Defendant's purported reason for Plaintiff's termination, however, was completely false and pretextual, as Plaintiff had received a stellar performance rating just 30

days prior, after which Plaintiff had been immediately moved from training to full-duty work because of her strong performance.

23. Defendant brought up alleged "performance issues" ***only after*** Plaintiff notified Defendant's management of her aforesaid health conditions and requested the ability to use a wheelchair (a reasonable accommodation under the ADA) for same.

24. Following Plaintiff's termination, she was offered an unsolicited severance agreement requiring that Plaintiff waive any and all claims against Defendant (including those for discrimination and retaliation) for a very small sum of money, which Plaintiff did not sign.[2]

25. Plaintiff believes and therefore aver that she was actually terminated for her actual/perceived/record of health conditions; her requested accommodations (which constitutes illegal retaliation); and Defendant's failure to properly accommodate Plaintiff's health conditions.

## Count I
## Violations of the Americans with Disabilities Act, as Amended ("ADAAA")
([1] Actual/perceived/Record of Disability Discrimination;
[2] Retaliation; and [3] Failure to Accommodate)

26. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

---

[2] *See e.g.*, *Staffieri v. Northwestern Human Servs.*, 2013 U.S. Dist. LEXIS 72115 at **14-15 (E.D. Pa. 2013) (an employer who offered severance at the time of termination when policies did not require upon condition of waiving claim supported finding of pretext among other facts); *Bartlett v. NIBCO Inc.,* 2011 U.S. Dist. LEXIS 28072 (N.D. Ind. 2011) (finding that a severance agreement offered contemporaneously to when the employee was terminated was "probative on the issue of whether NIBCO's motive for terminating Bartlett was [false]."); *EEOC v. Republic Servs.,* Inc., 640 F. Supp. 2d 1267 (D. Nev. 2009) (denying summary judgment and considering as evidence in wrongful termination case that a company would offer severance when an employee is supposedly terminated in a manner that doesn't warrant severance per an explicit company policy); *Karl v. City of Mountlake Terrace,* 2011 U.S. Dist. LEXIS 59085 (W.D. Wash. 2011) (severance agreements are admissible in retaliation claims when made contemporaneous to termination, as they are not governed by Fed.R.Evid. 408); *Brandy v. Maxim Healthcare Servs., Inc.,* 2012 WL 5268365, at *2 (N.D. Ind. 2012) (holding that severance agreements offered at the time of termination do not fall under Rule 408 because they are offered before a dispute arises, regardless if the employer "anticipated the severance agreement curtailing any potential future litigation.").

27. Plaintiff believes and therefore avers that she was subjected to: discriminatory treatment; a refusal to accommodate her disabilities; disparate treatment; and pretextual discipline because of: (a) her actual, perceived and/or record of disability; (b) her requested accommodations; and/or (c) her requests for accommodations under the ADA.

28. Plaintiff also asserts that Defendant refused to engage in the interactive process with Plaintiff and accommodate her disability.

29. On or about March 16, 2023, Plaintiff was ultimately terminated from her employment with Defendant for unwarranted and pretextual reasons.

30. Plaintiff believes and therefore avers that her: (a) known disabilities; (b) perceived disabilities; and/or (c) her record of impairment were motivating and/or determinative factors in the decision to terminate her employment.

31. Plaintiff also claims that Defendant terminated her employment because she engaged in protected activity under the ADA, including requesting a reasonable medical accommodation under the ADA.

32. Defendant's unlawful discrimination and retaliation constitutes violations of the ADAAA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to be prohibited from continuing to maintain its illegal policy, practice or custom of discriminating/retaliating against employees and are to be ordered to promulgate an effective policy against such unlawful acts and to adhere thereto;

B. Defendant is to compensate Plaintiff, reimburse Plaintiff and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to past lost earnings, future lost earnings, salary, pay

increases, bonuses, medical and other benefits, training, promotions, pension, and seniority. Plaintiff should be accorded those benefits illegally withheld from the date she first suffered retaliation/discrimination at the hands of Defendant until the date of verdict;

C. Plaintiff is to be awarded punitive damages, as permitted by applicable law(s) alleged asserted herein, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for their willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded any and all other equitable and legal relief as the Court deems just, proper and appropriate including for emotional distress;

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable legal fees as provided by applicable federal and state law;

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

          Respectfully submitted,

          **KARPF, KARPF & CERUTTI, P.C.**

By: _____
      Ari R. Karpf, Esq.
      3331 Street Road
      Two Greenwood Square
      Building 2, Ste. 128
      Bensalem, PA 19020
      (215) 639-0801

Dated: June 6, 2023